# SUPREME COURT OF THE UNITED STATES

## MASSACHUSETTS LOBSTERMEN'S ASSOCIATION, ET AL. *v.* GINA M. RAIMONDO, SECRETARY OF COMMERCE, ET AL.

### ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 20–97. Decided March 22, 2021

The petition for a writ of certiorari is denied.

Statement of CHIEF JUSTICE ROBERTS respecting the denial of certiorari.

Which of the following is not like the others: (a) a monument, (b) an antiquity (defined as a "relic or monument of ancient times," Webster's International Dictionary of the English Language 66 (1902)), or (c) 5,000 square miles of land beneath the ocean? If you answered (c), you are not only correct but also a speaker of ordinary English. In this case, however, the Government has relied on the Antiquities Act of 1906 to designate an area of submerged land about the size of Connecticut as a monument—the Northeast Canyons and Seamounts Marine National Monument.

The creation of a national monument is of no small consequence. As part of managing the Northeast Canyons and Seamounts Marine National Monument, for example, President Obama banned almost all commercial fishing in the area with a complete ban to follow within seven years. Presidential Proclamation No. 9496, 3 CFR 262, 266–267 (2016). According to petitioners—several commercial fishing associations—the fishing restrictions would not only devastate their industry but also put severe pressure on the environment as fishing would greatly expand in nearby areas outside the Monument. Although the restrictions were lifted during this litigation, Presidential Proclamation No. 10049, 85 Fed. Reg. 35793 (2020), that decision is set to be reconsidered and the ban may be reinstated, Exec. Order

No. 13990, 86 Fed. Reg. 7037, 7039 (2021). Either way, the Monument remains part of a trend of ever-expanding antiquities. Since 2006, Presidents have established five marine monuments alone whose total area exceeds that of all other American monuments combined. Pet. for Cert. 7–8.

The Antiquities Act originated as a response to widespread defacement of Pueblo ruins in the American Southwest. Because there was "scarcely an ancient dwelling site" in the area that had not been "vandalized by pottery diggers for personal gain," the Act provided a mechanism for the "preservation of prehistoric antiquities in the United States." Dept. of Interior, Nat. Park Serv., R. Lee, The Antiquities Act of 1906, pp. 33, 48 (1970) (internal quotation marks omitted). The Act vests significant discretion in the President, who may unilaterally "declare by public proclamation historic landmarks, historic and prehistoric structures, and other objects of historic or scientific interest that are situated on land owned or controlled by the Federal Government to be national monuments." 54 U. S. C. §320301(a). The President may also reserve "parcels of land as a part of the national monuments," but those parcels must "be confined to the smallest area compatible with the proper care and management of the objects to be protected." §320301(b).

The broad authority that the Antiquities Act vests in the President stands in marked contrast to other, more restrictive means by which the Executive Branch may preserve portions of land and sea. Under the National Marine Sanctuaries Act, for example, the Secretary of Commerce can designate an area of the marine environment as a marine sanctuary, but only after satisfying rigorous consultation requirements and issuing findings on 12 statutory criteria. See 16 U. S. C. §1433(b). The President is even more constrained when it comes to National Parks, which may be established only by an Act of Congress. See 54 U. S. C. §100101 *et seq.*

While the Executive enjoys far greater flexibility in set-
ting aside a monument under the Antiquities Act, that flex-
ibility, as mentioned, carries with it a unique constraint:
Any land reserved under the Act must be limited to the
smallest area compatible with the care and management of
the objects to be protected. See §320301(b). Somewhere
along the line, however, this restriction has ceased to pose
any meaningful restraint. A statute permitting the Presi-
dent in his sole discretion to designate as monuments "land-
marks," "structures," and "objects"—along with the small-
est area of land compatible with their management—has
been transformed into a power without any discernible
limit to set aside vast and amorphous expanses of terrain
above and below the sea.

The Northeast Canyons and Seamounts Marine National
Monument at issue in this case demonstrates how far we
have come from indigenous pottery. The Monument con-
tains three underwater canyons and four undersea volca-
noes. The "objects" to be "protected" are the "canyons and
seamounts themselves," along with "the natural resources
and ecosystems in and around them." Presidential Procla-
mation No. 9496, 3 CFR 262.

We have never considered how a monument of these pro-
portions—3.2 million acres of submerged land—can be jus-
tified under the Antiquities Act. And while we have sug-
gested that an "ecosystem" and "submerged lands" can,
under some circumstances, be protected under the Act, see
*Alaska* v. *United States*, 545 U. S. 75, 103 (2005), we have
not explained how the Act's corresponding "smallest area
compatible" limitation interacts with the protection of such
an imprecisely demarcated concept as an ecosystem. The
scope of the objects that can be designated under the Act,
and how to measure the area necessary for their proper care
and management, may warrant consideration—especially
given the myriad restrictions on public use this purely dis-
cretionary designation can serve to justify. See C. Vincent,

Congressional Research Service, National Monuments and the Antiquities Act 8–9 (2018) (detailing ways in which "management" of a monument limits recreational, commercial, and agricultural uses of the surrounding area).

\*    \*    \*

Despite these concerns, this petition does not satisfy our usual criteria for granting certiorari. No court of appeals has addressed the questions raised above about how to interpret the Antiquities Act's "smallest area compatible" requirement. 54 U. S. C. §320301(b). The D. C. Circuit below held that petitioners did not plead sufficient facts to assess their claim that the Monument swept beyond the "smallest area compatible" with management of the ecosystem. To date, petitioners have not suggested what this critical statutory phrase means or what standard might guide our review of the President's actions in this area. And at the present time the issue whether to reinstate the fishing prohibition remains under consideration. Exec. Order No. 13990, 86 Fed. Reg. 7037, 7039.

We may be presented with other and better opportunities to consider this issue without the artificial constraint of the pleadings in this case. See Pet. for Cert. 34 (citing five other cases pending in federal courts concerning the boundaries of other national monuments). I concur in the denial of certiorari, keeping in mind the oft-repeated statement that such a denial should not be taken as expressing an opinion on the merits. See *Missouri* v. *Jenkins*, 515 U. S. 70, 85 (1995).